**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MELANY DAYSI OSORIO-CUENCA,

                   Petitioner,

           v.

DAVID MARIN, et al.,

                   Respondents.

Case No. 5:26-cv-02481-SP

**MEMORANDUM OPINION AND ORDER GRANTING PETITION**

**I.**

**INTRODUCTION**

On May 11, 2026, petitioner Melany Daysi Osorio-Cuenca, a federal immigration detainee, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition" or "Pet."). Docket no. 1. Petitioner is being held at the U.S. Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California. Petitioner contends her detention violates the Immigration and Nationality Act ("INA") and her right to procedural due process under the Fifth Amendment. Petitioner seeks immediate release from immigration custody or, in the alternative, a bond hearing, as well as declaratory relief.

1

On May 18, 2026, respondents filed an Answer.  Docket no. 7.  Petitioner filed a Reply on June 25, 2026 and a supplemental notice on June 26, 2026 ("Supp.").  Docket nos. 8-9.

For the reasons discussed below, petitioner's procedural due process claim merits habeas relief.  The court therefore grants the Petition and issues a writ of habeas corpus requiring petitioner's immediate release from immigration custody along with other relief.

**II.**

**BACKGROUND**

Petitioner is a 31-year-old native and citizen of Peru.  Pet. ¶ 1.[1]  Petitioner entered the United States without inspection on October 3, 2022.  *Id*. ¶ 18.  A Customs and Border Patrol agent apprehended her about 300 yards north of the border.  *Id*.  On October 11, 2022, petitioner was released from custody subject to subject to supervision requirements.  *See id*. ¶¶ 1, 19-23.  Petitioner filed an asylum application on September 13, 2023.  *Id*. ¶ 28.

After her initial release from immigration custody, petitioner married and lived in Los Angeles County with her spouse and her spouse's family.  *Id*. ¶¶ 1, 24.  Petitioner is employed, her name is on a lease, and she owns a car.  *Id*. ¶¶ 25-27.  Petitioner contends she complied with the conditions of her release, including appearing for ICE check-ins.  *Id*. ¶¶ 1, 22.  Respondents dispute this, pointing to two missed two biometric check-ins in January and March 2026.  Answer at 3; *see* Pet. Ex. (docket no. 1-2) at 3.

---

[1]   The Petition is signed only by petitioner's counsel and it is not verified by petitioner.  The court therefore accepts the facts alleged in the Petition only: (1) for the purposes of Part II of this opinion if uncontested; (2) if supported by documents submitted by petitioner as part of the Petition; or (3) if the information could be within counsel's personal knowledge.

2

On April 11, 2026, petitioner was arrested for misdemeaner driving under the influence ("DUI").  Pet. ¶ 2.  Petitioner has not been convicted of the DUI, although the charge remains pending.  *Id*. ¶¶ 2, 11.

On April 14, 2026, petitioner appeared at a routine ICE check-in, where was detained.  *Id*. ¶¶ 2, 30.  ICE did not have an arrest warrant but informed her that her DUI arrest violated the conditions of her release.  *Id.*. ¶¶ 31, 43.

On May 6, 2026, an immigration judge denied petitioner's motion for a bond hearing for lack of jurisdiction.  *Id*. ¶ 34; Reply at 2.  Petitioner filed a second motion for a bond redetermination hearing on June 15, 2026.  Reply at 4.  ICE opposed the motion on grounds that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  *Id*. at 4-5, Ex. (docket no. 8-4).  The immigration judge again denied the request for lack of jurisdiction.  Supp. at 4, Ex.

### III.

### **DISCUSSION**

Petitioner effectively raises two claims for relief, that her detention violates: (1) the INA; and (2) her procedural due process rights under the Fifth Amendment.  Pet. ¶¶ 36-74.  Respondents contend petitioner appears to be a member of the Bond Eligible Class certified in *Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), judgment entered sub nom. *Maldonado Bautista v.  Noem*, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), so to the extent she is entitled to a remedy, it would be a bond hearing.  Answer at 3-5.

**A.**    **This Court Has Jurisdiction Over the Claims in the Petition**

A federal district court may issue a writ of habeas corpus when a petitioner demonstrates she is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484

(1973).   Here, petitioner argues she should be released from respondents' custody because her re-detention following her initial release violates the Due Process Clause of the Fifth Amendment.  *See* Pet. ¶¶ 69-76.  She has therefore properly invoked this court's habeas jurisdiction.

The INA contains several provisions that limit judicial review of immigration-related matters, including most notably 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g).  While § 1252(g) strips the court of jurisdiction to hear any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," the Supreme Court has clarified that the language of § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions," but instead refers "to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted).  The applicability of § 1252(b)(9), which works in conjunction with § 1252(a)(5) to channel certain immigration-related matters to the Courts of Appeals, has been limited in similar fashion. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citation omitted); *see also Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810-11 (9th Cir. 2020) ("Section 1252(b)(9) is also not a bar to jurisdiction . . . because claims challenging the legality of detention . . . are independent of the removal process.") (citations omitted).  Because petitioner is challenging her detention rather than any of the three actions listed above, 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) do not strip this court of jurisdiction.

**B.	Petitioner's Re-Detention Without Adequate Procedural Protections Violated Due Process**

The Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of liberty without due process of law.  U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

Federal courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted); *see also Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022) (applying the two-step inquiry).

### 1. **Petitioner Has a Protected Liberty Interest**

The first step asks whether respondents have interfered with petitioner's protected liberty interest. Petitioner argues she has a liberty interest in her release from immigration custody. *See* Pet. ¶ 75

Conditional release from custody may give rise to a protected liberty interest. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). "Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025) (citing *Young*, 520 U.S. at 147-49); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *see Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citing *Morrissey*, 408 U.S. at 482).

In *Morrissey*, the Supreme Court explained that "[t]he liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime." 408 U.S. at 482. "Subject to the conditions of [their] parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* "[T]he liberty of a parolee, although

indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.*

This was petitioner's situation.  She arrived in the United States on October 3, 2022 and has resided here ever since.  Pet. ¶¶ 18, 25.  She is married, lives with her spouse's family, and is employed.  *Id*. ¶¶ 24, 26.  Petitioner established a life for herself in the United States while released on parole and therefore has acquired a protected liberty interest in her release from immigration custody.  *See e.g., Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1163 (C.D. Cal. 2025); *Mody v. Warden*, 2026 WL 51976, at *5-6 (C.D. Cal. Jan. 5, 2026); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("petitioner has a liberty interest in his continued release on bond."); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1046 (E.D. Cal. 2025); *R.D.T.M.*, 2025 WL 2686866, at *4-5; *Esquivel Pacheco v. LaRose*, 2026 WL 242300, at *6 (S.D. Cal. Jan. 29, 2026); *Osmonaliev v. Cantu*, 2025 WL 3637397, at *1 (D. Ariz. Dec. 16, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321-22 (W.D. Wash. 2025).

    **2.**    **Petitioner Was Entitled to a Pre-Deprivation Hearing Prior to Re-Detention Under the Due Process Clause**

"To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge . . . .*" *Pinchi*, 792 F. Supp. 3d at 1033 (citation omitted); *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying the *Mathews* factors in the immigration context). The three factors considered by the court under *Mathews* are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (citation omitted).

The first factor examines petitioner's private interest, here her interest in being free from detention. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted); *Hernandez*, 872 F.3d at 993 (holding it "is beyond dispute" that "freedom from imprisonment is at the core of the liberty protected by the Due Process Clause"). Petitioner has developed ties to the community since her arrival in the United States. She lives in Los Angeles County with her spouse and family, and is employed. *See* Pet. ¶¶ 24, 26. Given her ties to family and ability to work in the United States, petitioner has formed the "enduring attachments of normal life" described in *Morrissey*. As such, her personal interest in remaining out of immigration custody is extremely high.

The second factor examines the risk of erroneous deprivation of petitioner's liberty interest, as well as the value of additional procedural safeguards. "The risk of an erroneous deprivation of liberty is high where, as here, petitioner has not received any bond or custody redetermination hearing." *R.D.T.M.*, 2025 WL 2686866, at *6 (citation modified). The Supreme Court has made clear that immigration proceedings are civil in nature and must be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. Therefore, immigration detention must be justified by one of two regulatory goals – preventing risk of flight or danger to the community. *Id.* Respondents already made such a determination with respect to petitioner when they released her into the United States, concluding she presented neither a risk of flight nor danger to the community. *See* 8 C.F.R. § 212.5(b) (requiring that a non-citizen "present neither a security risk nor a risk of absconding" before being granted parole). Petitioner states she complied with her reporting requirements. Pet. ¶ 1. Respondents contend she missed two biometric appointments and was arrested for a DUI. Answer at 3. Assuming respondents are correct, petitioner is still entitled to a pre-deprivation hearing at which she can challenge respondents' allegations and whether, if true, they should result in her detention. Thus, "[g]iven the absence of any procedural safeguards to determine if [petitioner's] detention

was justified, the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *R.D.T.M.*, 2025 WL 2686866, at *6 (citation and internal quotation marks omitted); *Mourey v. Bowen*, 2026 WL 467567, at *5 (C.D. Cal. Jan. 31, 2026) (same).

Finally, the third factor examines the government's interest, which here would be its interest in detaining petitioner absent additional process. As other courts have repeatedly recognized, "there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Meneses*, 811 F. Supp. 3d at 1164; *see also R.D.T.M.*, 2025 WL 2686866, at *6 (collecting cases); *Pinchi*, 792 F. Supp. 3d at 1036; *Hasratyan v. Bondi*, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026); *Yataco v. Warden, Adelanto Det. Facility*, 2025 WL 4065463, at *6 (C.D. Cal. Dec. 26, 2025). The cost of providing a pre-deprivation hearing to petitioner is minimal and custody hearings are routinely conducted by Immigration Courts. *See Singh v. Bowen*, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citations omitted); *see also Pinchi*, 792 F. Supp. 3d at 1036. Moreover, because petitioner has already been found not to be a danger to the community or a flight risk by respondents, the government has minimal interest in detaining her at all, absent some showing of changed circumstances. *See Hernandez*, 872 F.3d at 994 ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). Again, the government points to changed circumstances here, but whether two missed appointments and a DUI arrest warrant detention is a matter for the hearing.

In sum, given petitioner's strong interest in being free from immigration detention, the high risk of erroneous deprivation of her liberty interest, the high value of additional procedural safeguards, and the lack of government interest in detaining petitioner without additional process, all three of the *Mathews* factors strongly favor petitioner. Therefore, the government's re-detention of petitioner without adequate process violated petitioner's right to procedural due process under the Fifth Amendment.

Because petitioner's re-detention was unlawful, the proper remedy generally is release from custody.  *See Singh*, 2025 WL 3251437, at *9; *Yataco*, 2025 WL 4065463, at *7; *see also Faizyan v. Casey*, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025) (collecting cases).  Respondents argue the proper remedy here is a bond hearing; however, ICE has taken the opposite position in immigration court, successfully arguing the immigration court lacks jurisdiction to hold a bond hearing.  *Compare* Answer at 4 *with* Reply Ex. (docket no. 8-4).  Particularly given the contradictory positions taken by ICE before this court and the immigration court, release is the proper remedy here.

### 3.    Petitioner Is Entitled to a Pre-Deprivation Bond Hearing Before Any Future Re-Detention

Typically, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (citation omitted).  In the context of both parole and probation revocations, the nearest analogues to petitioner's immigration parole revocation, the Supreme Court has required pre-deprivation hearings to determine whether an individual's release may be revoked. *See Morrissey*, 408 U.S. at 480-86; *see also Gagnon*, 411 U.S. at 782.  Given petitioner's substantial liberty interest and the high risk of erroneous deprivation of that interest absent such a pre-deprivation hearing, due process requires a pre-deprivation hearing. *See e.g., Singh*, 2025 WL 3251437, at *8; *Yataco*, 2025 WL 4065463, at *7; *R.D.T.M.*, 2025 WL 2686866, at *6 (collecting cases).  In the immigration parole revocation context, courts have routinely found that individuals should be "afforded a hearing before a neutral decisionmaker prior to any re-arrest or re-detention to determine if the government has demonstrated by clear and convincing evidence that his detention is necessary to prevent danger to the community or flight."  *Singh*, 2025 WL 3251437, at *8; *Yataco*, 2025 WL 4065463, at *7; *R.D.T.M.*, 2025 WL 2686866, at *8; *Pinchi*, 792 F. Supp. 3d at 1038; *Padilla v. Bowen*, 2025 WL 3251368, at *10 (C.D. Cal. Nov. 21, 2025).

## C.    **Petitioner's Remaining Claim**

Petitioner also argues that respondents have violated the INA.  Pet. ¶¶ 36-68. Because the court has already concluded that petitioner is entitled to release on procedural due process grounds, it need not address petitioner's remaining claim. Petitioner may raise these claims again if she is subject to any future detention.

## IV.

## ORDER

IT IS THEREFORE ORDERED that: (1) Judgment will be entered granting the Petition; (2) respondents shall immediately release petitioner Melany Daysi Osorio-Cuena (A# 246-069-041) from immigration custody; (3) respondents shall return any confiscated property and documents to petitioner upon her release; (4) respondents are enjoined and restrained from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral decisionmaker, that petitioner presents a flight risk or a danger to the community; and (5) respondents shall file a status report no later than **July 30, 2026** confirming that petitioner has been released from respondents' custody.

Dated: July 27, 2026

_____
SHERI PYM
United States Magistrate Judge

10